LAND, J;
Plaintiff sued for $35,000 damages for personal injuries sustained by reason of the overturning of his surrey at a crossing of defendant’s track over a public road about a mile from the town of De Quincy in the parish of Calcasieu. In the construction of this crossing, the defendant made an excavation about 5 feet in depth across the public road and graded down the sides of the cut so as not to hinder or impede public travel on the highway. The approaches to the crossing were not kept in repair, but seem to have been left to the erosive action of the elements. The accident complained of happened on the southern approach on June 14, 1913, at which date, according to the overwhelming weight of the evidence, said approach was in a dangerous condition for vehicular travel, save with extreme caution. The water had washed the ditches into gullies, which had narrowed the approach in some places to 6 or 8 feet, and, about half way down the incline, there were one or more washes about 6 inches deep in the roadway.
The defendant in its answer specially denied that under the law it is made the duty of railroads crossing public roads to build, *216 construct, and maintain in good, perfect, and safe condition approaches of public roads crossing its tracts.
As to this defense the judge below says in his written opinion:
“Section 691 of the Revised Statutes, which makes it the duty of railroads in crossing highways to so construct their works as not to hinder, impede, or obstruct their safe and convenient use, imposes a continuing obligation. The duty is not forever discharged by so constructing their works in the first instance, but they must so maintain them.”
Counsel for defendant, in their brief, with commendable frankness, admit the correctness of the foregoing proposition, supported, as they say, by the weight of authority in other states of the Union, citing 33 Cyc. 273.
On the first trial of the case the evidence tended to prove that the plaintiff and his nephew on June 14, 1913, were traveling in an open-top surrey, pulled by one horse; that about dark they reached the southern approach to the crossing, and proceeded cautiously to descend the incline, the horse walking slowly in the middle of the road; that the horse when about 12 or 15 feet from the track stumbled and fell, and as soon as it regained its footing plunged 4 or 5 feet to the left, striking the end of the bridge or apron, and finally turned the surrey over on the edge of the railroad embankment; that plaintiff was violently thrown to the ground, landing on the small of his back, and received such a shock as to render him unconscious; and that his nephew jumped from the vehicle, and received a blow on his head which rendered him unconscious for a few minutes. In the language of the judge, the nephew “found the surrey turned over on the track, and the horse, which had broken out of harness, standing facing the surrey.”
The judge, after commenting on the evidence, said:
“It does not clearly appear what caused the horse to stumble in the first instance. However there was a depression about 12 or 15 feet from the track, which was about 6 inches deep, and which went partially or wholly across the approach. This depression had been there for some time, and the edges were worn down by passing vehicles, so as to give it, as I understand, something of a concave form. Assuming that this was the cause of the horse stumbling the court, after carefully considering the point, is of the opinion that such defects in a dirt road are common, and do not constitute actionable negligence, and that, therefore, plaintiff cannot recover. 20 L. R. A. (N. S.) 6-18, G. notes.”
The court rendered judgment in favor of the defendant, which, however, was set aside on plaintiff’s motion for a new trial.
On the second trial, additional evidence was introduced, and for reasons assigned in a well-considered opinion, judgment was rendered in favor of the plaintiff, in the sum of $8,000, with interest and costs.
Defendant has appealed, and plaintiff has answered praying for an increase of the award to $15,000.
The first judgment was rendered on the ground that the depression or wash across the approach was not an actionable defect. On the second trial, the judge, in his written reasons for judgment, came to the conclusion that he had erred in not also considering the gullies, which had narrowed the roadway to such an extent as to make the passage of vehicles unsafe, and smaller ruts which made the roadway rough.
On the evidence, which we have read and considered, we concur in the findings of the judge below, that the approach was in a dangerous and unsafe condition, and that the defects in the roadway were the primary and efficient cause of the accident. A witness for the defendant, who had frequently driven his wagon up and down the approach in question, testified that the most dangerous part of the road was about half way down, where there were “some washouts across the road.” The plaintiff and his nephew testified that the horse stumbled and fell at or near this point, and the violence of the fall suggests that the animal stepped or stumbled into some hole or depression in the narrow road *218 way. All the witnesses concur that the roadway in question was in a very had condition.
It was the statutory duty of the defendant company to construct and maintain its crossing so as not to hinder, impede, or obstruct the safe and convenient use of the highway. R. S.691; Act No. 157 of 1910. It follows that the defendant was negligent in not performing its statutory debt, and consequently is responsible to plaintiff in damages.
As to the question of damages, we see no good reason for increasing or decreasing the amount of the award. The plaintiff’s injury consisted of a bruise over the lower part of the spine, and a sprain on each side of the iliosacrum joint. The immediate effect of the injury was to render the plaintiff incapable of sitting up or standing on his feet. Plaintiff was on crutches when this case was tried; and the doctors seem to have been of opinion that plaintiff would never be able to perform hard manual labor, but in the course of three or four years might be able to ride around and attend to his business of trading in horses and cattle, out of which, plaintiff testified, he had been making annual profits of about $3,000 per annum. Considering the large element of loss of business capacity, even for three or four years', we cannot say that the award is excessive.
Judgment affirmed.