**McCARTY v. ILLINOIS CENT. R. CO.**
**et al.**

**No. 5964.**

Court of Appeal of Louisiana.
Second Circuit.

Dec. 1, 1939.

Rehearing Denied Feb. 7, 1940.

McVea Oliver and Jos. S. Amman, both of Monroe, for appellant.

Thompson & Thompson, of Monroe, for appellees.

DREW, Judge.

Plaintiff, Alfred McCarty, brought this action against the Illinois Central Railroad Company and the Yazoo & Mississippi Railroad Company for injuries allegedly sustained when plaintiff's automobile crashed into the center piling of a trestle owned by the defendant railway companies, said trestle crossing Louisiana Highway No. 13 in Ouachita Parish.

The defendants filed an answer to the plaintiff's petition but, before going to trial on the merits, filed exceptions of no cause or right of action. The case was tried on the exceptions and the lower court ruled that they were well founded and dismissed plaintiff's suit. Plaintiff has perfected an appeal to this court.

That portion of the plaintiff's petition at which the exceptions were directed reads as follows:

"2. Petitioner shows that said railroad companies are the owners and lessees of all the track, equipment, crossings and rights of way on their said line and track running from Monroe, Louisiana, to Shreveport, Louisiana, and more particularly that said defendants are the owners and lessees of the right of way, crossing, equipment and trestle located on Louisiana Highway No. 13, where said track crosses said highway, said crossing being at a point about one mile south of the intersection of the Highway and U. S. Highway No. 80, and being in Ouachita Parish, Louisiana.

"3. Petitioner shows that at the aforementioned point defendants maintain an overhead railroad crossing over said highway, and that said overhead crossing is of negligent construction, being supported by 18 wooden pilings in three rows of six each, one row of which is located in the center of said highway. He further shows that the distance between the center pilings and the outer ones is so narrow that there is barely room for an automobile to pass.

"4. Petitioner shows that at the point where the hereinafter described collision took place, the defendants' railroad is constructed upon a high embankment, which said embankment is connected with the aforementioned overhead crossing. He shows that during heavy rains water drains from said embankment across Highway 13 and cuts a deep rut and ditch across the lower part of said highway, all of which is on defendants' right of way and is well known to defendants herein; and that on or about June 14, 1938, and for several weeks prior thereto, the aforementioned rut and ditch did exist within approximately 20 feet of the first wooden pilings holding up defendants' tracks; petitioner further represents that said rut and ditch was one which could not be seen by the driver of an automobile and constituted a trap on said highway, all of which will be more fully shown upon the trial hereof.

"5. Petitioner shows that said overhead crossing is so constructed that loose gravel accumulates against and extends approximately 15 feet from the center row of pil-

ings holding up defendants' overhead crossing, and that this condition existed on or about June 14, 1938, and prior thereto, all of which was well known to defendant railroad companies.

"6. Petitioner shows that the above described condition of defendants' overhead crossing, approach and right of way was due entirely to the fault and negligence of defendant; that the said existed on June 14, 1938 and prior thereto; that the same operated as a trap on said crossing, approach and right of way, all of which should have been and was well known to defendants.

"7. Petitioner shows that on or about June 14, 1938, he, accompanied by his father, Louis H. McCarty, deceased, was driving south on Louisiana Highway No. 13 in a 1934 Plymouth coupe, owned by him, at a moderate speed; that he was driving in a prudent and careful manner, maintaining a careful lookout as he approached the aforementioned crossing, and that as he proceeded toward the right hand entrance to said crossing and when he reached a point approximately 20 feet from the first piling in the center of said crossing, his front wheels struck the above described rut and ditch, which caused the left front wheel of his automobile to be thrown into the loose gravel piled about and leading from said center piling; that he attempted to get out of said loose gravel, but was unable to do so before his rear wheels struck said rut and ditch and caused him to lose complete control of his automobile and the same to be thrown against the center pilings of defendants' crossing."

In order to recover under the allegations hereinbefore set out, it is necessary that there must have been an omission on the part of the railway company to perform some duty which, under the law of this state, was owed to plaintiff. Statutory law in this state covering intersections of highways and railroads is to be found in Act 157 of 1910, which reads as follows: "In all cases where railroads, tramroads, dirt or plank roads or canals shall cross any highway, the corporation shall so construct the works as not to hinder, impede or obstruct its safe and convenient use; * * *." Section 1.

And again, regarding the duties of railroads in respect to the crossing of public highways, the legislature set out the following rule in Act 132 of 1918, Section 1: "The powers and duties of the Railroad Commission of·Louisiana are hereby added to and enlarged; and the power and authority is hereby vested in the said Commission, and it is hereby made its duty to require the owner, possessor or operator of any railway, railroad, tram road, log road, transportation, irrigation or drainage canal, or syphon, crossing any public road already constructed or which may hereafter be constructed, to construct and maintain a suitable and convenient crossing over such public road, the said crossing to extend to the limits of the right of way, or fifty feet from the center of such railway, railroad, tram road, log road, transportation, irrigation or drainage canal or syphon, in accordance with the standard specifications furnished by the State Highway Department of the Board of State Engineers in respect to such crossings."

It is urged on behalf of the plaintiff that the petition in question clearly sets forth a violation of a duty set out in these statutes on the part of the defendant railroads.

In regard to a possible conflict in the above statutes, it was held in the case of Brandon v. Texas & N. O. R. Company, La. App., 169 So. 254, that the second act was in fact passed in order to afford a remedy by which the Railroad Commission (now the Public Service Commission) might force railroads to perform those duties placed upon them by the first statute.

It is urged on the part of the defendants that the duty to maintain approaches to railroad crossings is limited to grade crossings. The fact that the crossing in this instance is what is commonly referred to as an "underpass", is strongly emphasized as ground for dismissing plaintiff's action. In support of this proposition, counsel cites Becker v. Illinois Cent. R. Company, La. App., 147 So. 378, 379. In that case, as in this, the accident was caused by plaintiff's automobile colliding with a center tier of piling supporting an underpass. There the similarity ends. In that case the court held that the crossing was not negligently constructed and dismissed plaintiff's action by making the following statement:

"It must be conceded that, if there had been no center pier, there could have been no collision therewith, but it does not follow that, because there was a pier, its presence can be said to have been the proximate cause of the collision. It might as well be said that, had the truck not been manufactured, it could not have run into the pier, and that therefore the manufacturers,

because they made the truck, are chargeable with the accident.

"There must be overhead trestles, and there must be other obstructions near highways without which all such highways would, of course, be more safe. If all roads could be absolutely straight and could be built without any structures of any kind on or near them, of course there would be fewer accidents, but it does not follow that those who build roads with curves in them, or those who maintain necessary objects near them, are liable for all accidents in which such curves or such obstructions are remotely concerned."

In the present case, however, we are not concerned with the possibility of the construction of an underpass with a center line of piers as a negligent construction. This action is based on the fact that a ditch, caused by water running off the railroad during recent rains, had been cut in the highway 20 feet from the center piers of the trestle and that loose gravel had been piled in the center of the highway, due to the washing of the rain and the presence of the piling. Thus the negligence declared on is not the original construction of the crossing, but the failure to maintain it in good repair. It is further alleged that the defendants knew of the condition for some time and had done nothing about it.

We are of the opinion that, under the allegations, the railroad company violated a duty which was owed to the public to see that the highway was kept in reasonably safe condition and the failure to do so constituted negligence on its part.

In the case of Gulf C. & S. F. R. Company v. Louisiana Public Service Commission, 151 La. 635, 638, 92 So. 143, it was held that the Louisiana Public Service Commission had the power under Act 132 of 1918 to require a railroad to build and maintain an overpass where the conditions were such as would necessitate such type of construction. Under the terms of this decision, it is evident that the terms of Act 157 of 1910 and Act 132 of 1918 are not restricted to grade crossings, but the term crossing as used must be construed as to cover all intersections of highways and railroads.

Counsel for the defense relies upon the case of Illinois Central Railroad Company v. Leichner, 5 Cir., 19 F.2d 118, for the proposition that a railroad company is to maintain only that portion of a highway that is included within its track and is not responsible for crossing approaches within the right of way, but not within the track proper. This decision, although purported to be based on the law of this state, is in direct conflict with the jurisprudence of the state and we must therefore reach a different conclusion.

The cases of Darby v. New Orleans T. & M. R. Company, 139 La. 213, 219, 71 So. 490; Tharpe v. Sibley, L. B. & S. Railway Company, La.App., 144 So. 274; and Jones v. Tremont Lumber Company, 139 La. 616, 71 So. 862, lay down the rule that a railroad is required to maintain highway crossings and approaches from one edge of the right of way to the other, or as set out in Act 132 of 1918, for 50 feet each way from the center of the railroad.

We are of the opinion that the allegations of the petition, if proven to be true, would set forth a case of negligence on the part of the defendant railroad in failing to keep this crossing in repair.

The judgment of the lower court is therefore reversed, the exceptions are now overruled and the case is remanded for trial on the merits.