Plaintiff sues to recover the value of his truck alleged to have been destroyed when it backed off of a bridge on defendant's right of way and fell into a borrow pit, and for other items of damages resulting therefrom, including loss of use of the truck. For a cause of action he alleges that when the accident happened, the truck was being driven by his employee, Orie Martin; that he undertook to drive over a grade crossing between mileposts 110 and 111 in Bienville Parish in the daytime, after passing over a narrow bridge on the east side of the right of way, and:
"* * * in his attempt to take the rise which was necessary to go over the railroad track at this point, suddenly was confronted by a motor car stationed on the opposite, or west side, of the railroad track *Page 64 
which car could not be seen by the driver until petitioner's truck had been driven on to the railroad track. That the motor car belonged to the defendant railway company and had been placed on the west side of the track and partly upon the highway by said railway employees, to the extent that the defendant's motor car partly overlapped and obstructed the passage way afforded by the highway. That the highway was very narrow at this point and when the driver of petitioner's truck saw that his way was blocked, was forced to stop and, because of the steep rise at the crossing and the unprotected rails on the railroad track of defendant company, lost control of the said truck, which rolled back on to the bridge on defendant's right of way and turned over and off the bridge, being at the time loaded with cotton seed * * *."
It is additionally alleged that the crossing was a hazardous one; that the east approach thereto was steep and that the rails were not guarded or protected by heavy timbers as was defendant's duty to have done; that the bridge had no guard rails thereon, the absence of such contributing to the accident, and that the flooring thereon was not nailed down. Because of the mentioned acts of negligence, plaintiff theorizes defendant's liability for the damages sued for.
Defendant denies that any negligence on its part or that of its agents or servants or breach of duty due plaintiff or the public caused or contributed to the wrecking of the truck. It avers that the crossing in question was planked and guarded on each side of the rails; that the bridge off of which the truck overturned was built of strong thick planks and was about three times as wide as the distance between the truck's wheels; that the push car referred to did not occupy any portion of the road and was no hindrance to vehicular traffic from either direction, and that its presence in no way or manner played any part in the accident. Further pleading, defendant avers that the accident is solely attributable to the carelessness and negligence of the truck's operator and to the fact that the truck's brakes were defective and out of adjustment; that had the brakes been in proper mechanical condition and been applied by the driver, the truck would have been held on the track and not have rolled therefrom on to and off of the bridge. In the alternative, the contributory negligence of plaintiff, in using the truck with defective brakes and the negligent and careless operation thereof by his driver, is specially pleaded in bar of the demand.
After trial and submission of the case below, but prior to judgment, plaintiff applied to have it reopened on the ground of newly discovered evidence. The application was favorably acted upon and on second hearing plaintiff introduced seven witnesses to whose testimony defendant objected for the reason, as was clearly shown, that plaintiff had knowledge of what these witnesses knew about the case and the matters of which they testified at time of the first trial, but did not summon them. The Court admitted the testimony subject to the objection. These seven witnesses were all neighbors or kinsfolk of plaintiff. Their evidence was really in rebuttal of that introduced by defendant at first trial. Their testimony certainly was not "newly discovered" at time the application to reopen was filed. However, this additional testimony, as we appreciate the case, even if considered, is without controlling influence.
Plaintiff was awarded judgment for $218, and defendant appealed.
Plaintiff accredits the accident to three alleged causes, to-wit:
(1) Roughness of the crossing due to lack of guards on each side of the rails;
(2) Presence of the push car on west side of track;
(3) Lack of guard rails on bridge from which the truck overturned.
An array of witnesses for plaintiff testified that the rails were not guarded by the customary thick parallel boards; that there was no gravel above the ties between the rails and for these reasons the entire height of the rail, five and one-half inches, had to be climbed over by the wheels of any vehicle using the crossing. Contra, about as many witnesses for defendant, being members of its section crew, testified that the rails were adequately guarded and that there was a deposit of gravel above the ties between the rails. Photographs of the locus, taken the second day after the accident, definitely corroborate defendant's witnesses. It is shown that nothing was done in the interim to alter the physical condition of the crossing.
We are loath to believe that simply because of a minor accident, out of which litigation would probably grow, defendant's agents would hasten to improve the physical condition of a crossing, take pictures thereof and impose them and their *Page 65 
testimony in support of the conditions reflected by the pictures, upon a court of justice. This is what plaintiff contends has been done. On the other hand, it is unthinkable that the multitude of witnesses on behalf of plaintiff would come into court and perjure their souls simply to assist him in his efforts to recover a small judgment against a railroad company. One side is grievously wrong. Ordinarily, the pictures should break the balance. However, we do not think the crossing's condition, even though it were as plaintiff contends, the or a proximate cause of the truck's wrecking.
Martin, the truck driver, testified that after crossing the bridge, he put the truck in low gear and successfully ascended the grade to the east rail and moved on forward until both front wheels were on the west side of the west rail. When in this position, the dual rear wheels were near to and on east side of the east rail and the truck was squarely over the track. He also testified that immediately prior to crossing the west rail he reduced the gas feed and as the front wheels dropped from the rail the engine went dead. He is not positive what caused the motor to stop, but thinks it was due to the drop of the wheels from the rail. It is alleged in the above quotation from the petition that he was "forced to stop" on account of the push car's position. Martin further testified that when the motor stopped, the truck began to roll backward and that he applied the brakes and tried to start the motor, but failed; that the brakes were not sufficiently effective to stop the truck; that it continued to roll down the embankment on to and off of the north side of the bridge. He admits that the brakes were not in proper mechanical condition because they had to be "pumped" two or three times before they would "take". Martin admits that when his motor went dead and he saw the push car, he became excited and confused.
We are convinced that the braking power of the truck was only effective as to the left front wheel. Had the brakes been in good mechanical condition, they would have held the truck on the track. It seems to us that if the west rail had not been guarded it would have served as an effective scotch to the front wheels.
It is less than thirty feet from the west end of the bridge to the east rail. The bridge is about sixteen feet wide and the flooring consists of timbers eight inches thick and sixteen inches wide. There were no railings on it. The flooring of the bridge was not nailed to the sills according to plaintiff's witnesses. Defendant's witnesses say that the flooring was properly nailed down. The track is about five feet higher than the bridge which is on a level. The road to the bridge is twelve feet wide and of graded dirt construction. From the bridge's west end to and over the track, the surface is graveled.
Martin's own testimony makes it quite certain that the presence of the push car did not contribute to the accident. The truck was not backed down because of it. He stated that he intended to try to pass it but was prevented by the truck's action. Other motor vehicles did pass this car while there. There is considerable dispute as to whether the car encroached upon the narrow roadway. We are disposed to think, after a study of the testimony bearing thereon, that due care was exercised in placing this car.
The bridge off of which the truck rolled, in point of construction, compares fairly well with others of like or similar situation. It is not shown that other bridges of the kind carry railings and there is no law which requires that bridges of this character be equipped with guard rails. In this instance, it would have required guards of extraordinary strength to prevent the truck's overturning. Concrete railings often are inadequate in such emergencies. The absence of railings was an exceedingly remote factor in the chain of causation culminating in the wreck.
The truck involved was a 1934 or 1935 model Dodge, of one and one-half ton capacity. Plaintiff paid $75 for it and added substantial repairs. It is shown that if the brakes had been efficient they would easily have held the truck on the track. At the time it carried a load not equal to one-third of its capacity.
It is evidently true that Martin became excited when the truck began to back from the track. This, in part at least, accounts for him not guiding the vehicle safely to and across the bridge. The fact that only the front left wheel had braking power also influenced the truck's irregular downward movement. The bridge was several feet wider than the roadway, and within a distance of not over thirty feet, it should have been an easy matter to safely steer the truck upon and across it, but for said reasons. Martin's own carelessness, augmented by the inefficiency of the brakes, brought about the accident. If defendant is chargeable *Page 66 
with negligence in any respect, such had passed out of the case as a factor of influence and became an extremely remote contribution to the accident.
Act 157 of 1910, amending Section 691 of the Revised Statutes, imposes upon railroads, whose tracks cross any highway, the duty to so construct its works "as not to hinder, impede or obstruct its (the crossing's) safe and convenient use". This duty extends to the limits of the right of way at the crossing, or fifty feet each way from the center of the track. Act 132 of 1918, Section 1; McCarty v. Illinois Central Railway Co. et al., La.App., 194 So. 96.
It has frequently been held that the law does not require such a crossing, from standpoint of physical condition, to be entirely fool proof. If maintained in a reasonably safe condition, this meets legal requirements. The most that can be said on the subject is that the testimony in this case does not establish that the crossing was not in a reasonably safe condition for vehicular traffic thereon. This would bar recovery even though no other bar thereto was proven. Martin crossed there with the truck the day of and prior to the accident. A school bus regularly passed over it as well as other motor cars.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed; plaintiff's demand is rejected and his suit dismissed at his cost.