In the early morning of October 28, 1940, Oakley Daugherty, truck driver, and Mitchell Ashy, bookkeeper and field man of Bradford Lewis, were conveying a heavy dragline unit loaded on what was called a lowboy trailer, attached to a new International truck, all the property of the said Bradford Lewis. The outfit was being conveyed to a WPA project on the Duplechain Road, which road extends east and west across the tracks of the defendant company at a point near the northern corporate limits of the town of Oberlin. Ashy was driving in his own automobile ahead of the truck, and Daugherty was following him with the truck and the dragline outfit. They were travelling east on the said Duplechain Road and when they arrived at the crossing where the Duplechain Road intersects the railroad tracks which run north and south, they first parked the truck and automobile and for some minutes investigated the crossing to determine whether or not it was safe to negotiate it with this heavy unit, it being shown that the truck weighed approximately 7,000 pounds and the trailer and dragline some 26,000 pounds, and that the overall length of the unit was about 45 feet.
After their investigation Ashy and Daugherty decided it would be safe to cross the railroad crossing at an angle, and accordingly Daugherty, directed by Ashy, who carried a lighted lantern, attempted to negotiate the crossing at an angle, and after the rear wheels of the truck had passed the tracks, the unit became stalled or stuck, and at just about this time Ashy noticed a train coming towards the crossing and thereupon ran up the track, some 50 feet, waiving his lantern, but apparently his signal was too late and the train, a freight train composed of 62 cars, travelling at a speed estimated from 40 to 50 miles per hour (less than 45, according to the testimony of those best qualified to pass upon it), crashed into the outfit, turning the truck completely around on the east side of the tracks, and dragging the trailer and dragline for a distance of about 85 feet.
It is shown that the accident happened some time between 5:30 and 6:30, and that there was a very heavy fog which hugged the ground and which prevented visibility for a distance of more than a few feet, estimates ranging from 40 to 160 feet.
The plaintiff is the insurer of Bradford Lewis, said insurer having paid the sum of $780.21 to Bradford Lewis under collision coverage and having obtained a subrogation from him. There is no dispute as to the correctness of the amount sued for and the question at issue is merely the question of liability.
Plaintiff in the lower court claimed that the accident was caused by the gross negligence of defendant railroad company in not providing a safe grade crossing, in driving its freight train at an excessive rate of speed through the town of Oberlin, and in a heavy fog and in failing to keep a proper lookout. It alleges further that plaintiff's train was travelling in violation of a town ordinance. In the alternative plaintiff alleges that the defendant railroad company had the last clear chance to avoid the collision, since the unit had become stuck at the crossing and could not move.
The defendant denies being guilty of any negligence whatsoever, and in the alternative, in the event that any negligence on its part is shown, pleads that plaintiff's subrogor was guilty of contributory negligence barring recovery.
The lower court absolved both the plaintiff and the defendant of negligence, and dismissed plaintiff's suit. Plaintiff has appealed.
Before this court plaintiff has in effect abandoned its contention with reference to the town ordinance, and in any event the existence of a town ordinance regulating the speed of trains is not proved. Plaintiff also appears to have abandoned its contention that the defendant's trainmen were guilty of not keeping a proper lookout, and in any event it is definitely proved that defendant's employees gave all the required signals and were at their proper places and performing their proper duties at the time of the accident. Before us plaintiff seems to rely on two points to establish defendant's negligence: first, that defendant was grossly negligent in driving its train at a rapid rate of speed, in a dense fog; and, second, in failing to maintain a proper grade crossing.
As far as the speed of the train is concerned, it is shown by the testimony of the trainmen that it was travelling at its usual rate of speed, and it is shown and found by the trial judge that the accident occurred either right outside, or right inside *Page 64 
the northern limits of the town of Oberlin, where the surrounding section was rather sparsely settled and at a time when traffic at that point is not usually present. As previously stated, there was a very heavy fog which hugged the ground and visibility was bad, estimates ranging from 40 to 160 feet. It is further shown that the operators of the train had given signals by whistle and by ringing of the bell of the train's approach for this crossing. In fact, it is not seriously contended in this court that the train operators were not keeping a proper lookout, except the bare fact that the engineer did not see the stalled trailer on the track until he was up on it, which is explained by the presence of a dense fog.
In the case of Foster v. Texas P. Ry. Co., 5 La.App. 601, this court has had occasion to express itself relative to the duties of railroad operators during heavy fogs, in these words: "It seems to us that it would be unreasonable to require a railroad company to slow down during heavy fogs and delay its trains at every point along its line, where cattle or live stock might at some time in the past have been killed." It is to be noted that the point was not raised that a train should only be operated at such a speed as would enable the engineer, on seeing obstructions on the track, to avoid running into them, but the language used by this court clearly indicates that it would not have agreed with such contention.
The rule of law which requires an automobile to be driven at such a rate of speed so as to be stopped within the range of the operator's vision does not apply to operators of a train on a railroad. The train of the defendant company was being operated on its own property; it could not be so easily stopped, nor could it be veered in any other direction. To require a train to be so operated in a sparsely settled community and at a time when traffic is not usually present at such a speed as to permit its being stopped within the distance an object may be seen on the track during a heavy fog would seriously interfere with train schedules in which the public is as much interested as the railroad company.
In the case of Smith v. Thompson, La.App., 185 So. 71, 74, Judge Hamiter, now associate justice on the Supreme Court, speaking for the Second Circuit Court of Appeal, says:
"It is well recognized that fog and rain prevent a locomotive's operators from having good visibility of the tracks ahead, just as does the presence of a curve when the train is traveling at night; yet the courts have held on several occasions that a railroad company is not required to slow its train during rainy or foggy weather," citing a number of authorities.
It is our understanding that the law does not require trains to be operated at a speed permitting them to be stopped within the range of vision of its operators. See Jeter v. Texas P.R. Co., 149 So. 144.
The plaintiff relies on the cases of Blackburn v. Louisiana Ry. Nav. Co., 144 La. 520, 80 So. 708; Shipp v. St. Louis Southwestern Ry. Co., La.App., 188 So. 526, and Peart v. Orleans-Kenner Traction Co., 11 La.App. 11, 123 So. 822. The mere reading of the first two cases will clearly demonstrate that the two are inapposite to the case at bar. In the Blackburn case, there was testimony to the effect that the engineer was waving his hands at persons on the side of the track and that he was not maintaining a proper lookout. In fact, we gather from the decision that the fireman also was not keeping a proper lookout ahead, and these employees were charged with not seeing that which by the exercise of ordinary care they should have seen. In the Shipp case, there were no physical objects on the tracks to interfere with vision, except some weeds not over eight inches high, and not dense. Visibility that night was good. Likewise, the employees were charged with failure to see that which should have been seen. The Peart case involved an interurban electric car at a grade crossing approaching a bend or curve in the track with serious doubt as to whether any warning signal was given. Although this case seems to be in favor of plaintiff's position, yet we feel that there is too much difference between an interurban electric car and a freight or passenger train. It stands to reason that an interurban car can be stopped in a shorter distance than a freight train.
In the language of the presiding Judge:
"In view, therefore, of the location of the place of this accident, not in a business section of the town but near the Northern corporate limits, where the country is not thickly populated, and in view of the foggy condition at the time of the *Page 65 
accident making it impossible to see objects on the tracks at a greater distance than from 40 feet to 150 feet, and in view of the fact that the train was travelling at a rate of speed between 40 miles and 50 miles per hour, and in view of the fact that the operators of the train had given proper warning signals by whistle and by bell of the approach to this crossing, and in view of what this Court interprets to be the line of jurisprudence on these issues, this Court can not feel that the plaintiff has carried the burden of establishing negligence on the part of the operators of this train as the proximate cause of this accident."
The next charge of negligence is that defendant failed to maintain this crossing in a safe condition for traffic. Act No. 157 of 1910, amending Section 691 of the Revised Statutes, requires railroads to keep the crossings over public highways in such condition as not to hinder, impede or obstruct the safe and convenient use of such highways. A failure on the part of the railroad to keep such crossing in repair thereby causing injury to a traveler on such road, renders the railroad liable in damages. Darby v. New Orleans, T. M.R. Co., 139 La. 213, 71 So. 490; Jones v. Tremont Lumber Co., 139 La. 616, 71 So. 862; Vandevender Co. v. New Iberia N.R. Co., La.App., 162 So. 601. The duty to keep the crossing in repair is a continuing duty on the railroad to be discharged whenever the condition of the crossing is in need of repair in order for it to be safe and convenient to the travelling public. Darby v. New Orleans 
M.R.R. Co., supra; Corpus Juris, Vol. 52, par. 1778, p. 182. Under this statute it is our understanding that it is not the duty of the railroad company to maintain its crossing safe and easy under all circumstances but that its duty is fulfilled if it maintains the crossing so as to permit safe and convenient passage over it by persons using reasonable care in the use thereof.
The evidence conclusively shows that the Duplechain Road leads from a paved highway immediately paralleling the right of way of defendant in an easterly direction, away from the business section of the town of Oberlin, near the northern corporate limits where the surrounding section was sparsely settled and where the traffic was comparatively light, very largely partaking of the nature and character of the ordinary rural grade crossing.
The truck and dragline unit was very heavy, of unusual length, and the trailer had a very low clearance, thus presenting an unusual type of vehicular traffic and an unusual situation for such a grade crossing.
We find the evidence to show with reasonable certainty that the height of this crossing from the level of the ground to the top of the rails was not exceeding three feet; that on the east side the total length of the grade was eighteen feet, thus showing a rise of one foot to every six feet, which cannot be considered as a steep grade; that the east approach was more abrupt than the west approach, and that the unit approached the track from the west, and it naturally follows that the west approach was not as steep as the east. From the testimony and photographs of the crossing offered in evidence, we gather that this crossing was in a reasonably safe condition as an ordinary grade crossing and was safe for the usual and customary type of traffic on this road. In fact, Mr. Ashy, the field man of Mr. Lewis, and Mr. Daugherty, the truck driver, prior to their attempt to negotiate this crossing, inspected the same for some fifteen minutes, and reached the conclusion that the crossing was safe.
The lower court, in his written opinion, concluded "that taking all these circumstances into consideration the defendant company cannot be held negligent in not maintaining the approaches to this crossing in a safe condition". This being a factual question, and after a thorough consideration of the oral testimony and the pictures in evidence, we cannot say that he erred in his conclusion.
As a last resort, the plaintiff contends, in the alternative, that the doctrine of the last clear chance is applicable to this case, and that it should recover under this rule. We again quote, with approval, from the trial court's opinion: "This Court, however, fails to see the applicability of this rule in this case. As this Court sees it, there was not the remotest possibility for the engineer to bring this train to a stop before striking this truck after he saw or should have seen it on the tracks ahead of him. The dense heavy fog prevented objects being seen at a greater distance *Page 66 
than 40 feet to 150 feet. Under no circumstances, therefore, even with the most careful lookout, and with the prompt use of every means possible to bring the train to a stop before striking the truck, could it have been done, even at a rate of speed of 15 miles per hour, or even less.
"This Court, therefore, concludes that the doctrine of the last clear chance can not be made applicable in this case."
The demands of the plaintiff were properly rejected by the judgment of the lower court, and for the reasons stated, the judgment is affirmed.