MARCUS, Judge.
Plaintiff, William Evans, brings this suit against defendant, Southern Pacific Company (hereinafter referred to as “railroad”) for damages resulting from an alleged injury suffered when the vehicle in which he was driving struck a hole in a railroad crossing in Terrebonne Parish in the vicinity of a community known as Schriever. The location of the alleged accident was the intersection of defendant’s tracks and Louisiana Highway 658. The highway is asphalt or “black topped” and runs generally north and south and the railroad tracks run generally east and west. There are four tracks or eight rails at this intersection.
The railroad filed an answer in the nature of a general denial and alternatively *459 asserted the affirmative defense of contributory negligence. There was also an intervention by Continental Casualty Company, the compensation insurer for plaintiff’s employer, Orkin Exterminating Company, Inc., seeking to recover compensatibn and medical expenses already paid and to he paid to plaintiff as a result of the alleged accident. The trial court rendered judgment in favor of defendant railroad and against plaintiff and intervenor, rejecting and dismissing their respective claims at their costs. From this adverse judgment, plaintiff and intervenor have perfected an appeal to this Court.
William Evans testified that he was driving a 1962 Ford Falcon station wagon which was owned by his employer, Orkin Exterminating Company, Inc. The alleged accident occurred about noon on September 16, 1965. Plaintiff’s brother, Jerry Evans, was a passenger in the right front seat. Plaintiff was proceeding in a northerly direction from Houma when he approached the railroad crossing. He testified that he slowed down, looked to his right and left and then proceeded to cross the tracks. He estimated his speed at 10 or 12 miles per hour. He claimed that as he crossed the last track he felt a hard jerk which threw him about in the car and he felt a sharp pain in his back. He further testified that he came to a stop several feet beyond the last track and observed a hole which was located between the last two rails towards Thibodaux. He described the hole as being 8 to 10 inches deep, a width from south to north of about a foot and a half, and extending almost the entire right side of the road. He further testified that both his front and rear wheels went into the hole. After the accident his brother drove him home at which time he claims that he contacted his family doctor whom he saw the next day. He also indicated that he did not return to the scene of the accident until almost a year and a month later in October, 1966 at which time the hole was no longer there. He stated further that he reported the accident to his employer but admitted that he did not report it to the defendant railroad. He admitted on cross-examination that he had been over the crossing several times before but in the opposite direction and knew it to be a rough crossing.
Jerry Evans, brother of the plaintiff and passenger in the right front seat of the vehicle, testified that plaintiff slowed down as he crossed the tracks and as they approached the last track he felt a terrific jolt as if they had fallen into a hole. He indicated that his brother then complained about his back and that he drove the car home. It should be observed that he offered no information as to the approximate measurements of the hole.
Mr. J. W. Evans, plaintiff’s father, testified that having been apprised of the accident, he took the occasion on September 20, 1965, four days after the alleged accident, while towing his boat to Houma for repairs, to stop at the crossing to look at the hole. He stated that he did so out of curiosity and not to investigate. He did not get out of his car but stopped near the hole “not over sixty seconds, probably about a minute.” He stated further that the hole was against the second rail of the first track (on the Thibodaux side) and was approximately 8 inches deep by 12 to 16 inches wide and covered the greater part of the left side of the road as one faced towards Houma. We agree with the trial judge who indicated in his written reasons for judgment that “other portions of the witness’ testimony are so confused as to cast considerable doubt on the accuracy of any of it.”
Gary Breaux, a friend of plaintiff for approximately eight years, testified that on his way back from work on September 13, 1965, three days before the alleged accident, he went over the same crossing and right past the middle of the tracks his car fell “in that hole, fell in a hole.” He could not say which track but indicated that it was “past the middle.” He further testified that the hole was “maybe a couple feet” past the middle of the tracks and that just his right front wheel went in it. He *460 did not inspect the hole at the time, but the next day on his way to work he examined it and estimated that the hole was 9 inches deep, 12 to 14 inches across by about two feet long. Mr. Breaux’s answers on cross-examination were evasive and made with reluctance but he finally admitted that he had traversed the crossing twenty or twenty-five times before and at least fifty times since and with the exception of the aforesaid occasion, he “never paid any attention to it.” Since Breaux’s testimony indicates the hole was a couple of feet past the middle of the four tracks and only two feet long whereas plaintiff’s other witnesses testified that the hole was between the rails of the last (northernmost) track and extended over the entire right side of the roadway, the trial judge felt and we agree that “there is considerable doubt that Breaux and the others were talking about the same hole.”
There would be no point in discussing and analyzing in detail the testimony of each of defendant’s witnesses. But, in summary, there were four witnesses: Sam Burke, a Texas Company employee; Thomas Haydel who was employed by Thomas Haydel & Sons, Inc., which deals in turtles, frogs, and crayfish for biological laboratories; Raymond Haydel who was employed in the same business as well as in the trapping business at the time of the alleged accident; and Earl Bergeron, a constable, deputy sheriff, and turtle dealer. They all testified that they lived in the vicinity of where defendant’s tracks cross La. Hwy. 658 and were, and are, familiar with and have frequently used the said crossing over a long period of time, including the time in which the accident allegedly occurred. The trial judge observed in his written reasons that “Though it is evident from their testimony that they had not made a mental note of the day, month and year each time they went over the crossing, (they would have been less credible if they said they had) the Court is persuaded that their testimony is pertinent in point of time.” They were in agreement that no holes of the size contended by the plaintiff were ever seen by them at the crossing.
Defendant also offered the testimony of the following four employees: Maurice Himel, who was track supervisor for the railroad in the Schriever area in 1965; Willie Guillot, defendant’s gang foreman since 1926 and stationed at Schriever for the past three and a half years; L. E. Thi-bodaux, an extra gang foreman; and William M. Bush, the roadmaster for defendant railroad stationed in Schriever since 1955. Thibodaux, at Bush’s instructions, raised the northernmost track four inches and though he did not recall when he did the work, the time was established by Bush to be in July, 1966. Thibodaux testified that when he started the work of raising the track, the crossing might have had a few little pot holes in it. He described a pot hole as being “two or three inches deep maybe.”
The substance of Himel’s and Guillot’s testimony was that at the time pertinent herein, the crossing had no holes of the size alleged by the plaintiff or any holes of the size which would have made the crossing dangerous. They considered the crossing to be in good condition the latter part of 1965.
Bush’s testimony indicates his frequent personal inspection of the crossing since 1955, the absence of any large or dangerous holes at any time in September 1965, and the complete absence of any complaints concerning the crossing.
It should be observed that Dr. Byron N. Unkauf in relating to the court the history of the accident as related to him by the plaintiff on August 16, 1967 testified that plaintiff stated that “as he crossed the track, he ran into a hole where the tracks were being worked on.” Assuming the accuracy of Dr. Unkauf’s reporting, this Court, as did the trial judge, finds it at least strange that neither plaintiff nor his corroborating witnesses testified as to anything which might indicate the tracks were being worked on at the time of the alleged *461 accident. Dr. Stuart I. Phillips saw plaintiff for the first time on September 30, 1965. In relating to the court the history given to him by the plaintiff, he testified that “He (plaintiff) stated that he was riding in a car when he hit a bump in the road. He stated that the bump jarred him and after that time he noticed pain in his back. * * * ” Again assuming the accuracy and completeness of Dr. Phillips’ reporting it seems significant that plaintiff did not mention going into a hole while negotiating a railroad crossing but only referred to hitting a “bump in the road.”
It is also significant to note that no report of the accident was made to the railroad at any time until the following May, more than seven months after the alleged accident.
In the recent case of Kinchen v. Traders and General Insurance Company, 198 So.2d 114 (La.App. 1st Cir.1967) this Court recognized Homeland Ins. Co. v. Thompson, 12 So.2d 62 (La.App. 1st Cir.1943) and Dantone v. Standard Mach. Co., 195 So. 39 (La.App. 1st Cir.1940) as authority for the standard of safe and convenient passage required by a railroad. In Homeland Ins. Co. v. Thompson, supra, the court in discussing the duty of the railroad under Art. 157 of 1910 (LSA-R.S. 45:324) stated:
“ * * * Under this statute it is our understanding that it is not the duty of the railroad company to maintain its crossing safe and easy under all circumstances but its duty is fulfilled if it maintains the crossing so as to permit safe and convenient passage over it by persons using reasonable care in the use thereof.”
In Dantone v. Standard Mach. Co., supra, the Court stated:
“ * * * Statutes, such as ours, requiring owners of railroads or spur tracks to maintain crossings in a safe condition, mean that these crossings are to be kept in a reasonably safe condition. It is not required that the surface of the road at the crossing be so smooth as to prevent any jar or jolt to a vehicle passing over it. Under such statutes a foolproof crossing is not expected or required.”
After carefully reviewing the record, we find, as did the trial court “that plaintiff has failed to sustain the burden imposed upon him by law — that of proving that defendant railroad company was negligent in its maintenance of the crossing.” Additionally, we are ever mindful that the trial judge heard and saw the witnesses and his findings of fact should not be disturbed in the absence of manifest error on his part. We find no such error here. To the contrary, we are in agreement with the trial judge’s findings of fact.
In view of these conclusions, we find no need to discuss the issue of contributory negligence.
For the foregoing reasons, we affirm the judgment of the lower court at appellants’ costs.
Affirmed.