SCHOTT, Judge.
Plaintiffs, Sidney L. Bardfield and Joseph P. Burns, have appealed from judgments dismissing their suits against New Orleans Public Belt Railroad (Public Belt) and American Marine Corporation (American). Plaintiffs sought damages for personal injuries sustained in separate accidents which occurred on August 22, 1969.
Both plaintiffs were employed as longshoremen scheduled to work at American’s facility on the Mississippi Riverfront in New Orleans and were both guest passengers in separate automobiles, traveling on a road leading to American’s facility. This road was on the property of the Board of Commissioners of the Port of New Orleans (the Dock Board), and was crossed over by *1299 train tracks belonging to Public Belt. These tracks were part of a spur track serving American’s facility but the spur had not been used for some time prior to the date of the accidents.
Hurricane Camille had occurred in the New Orleans area on August 17, 1969, and the severe flooding accompanying the hurricane had washed away the ballast between the rails and for a short distance on both sides of the tracks. As each one of the automobiles reached the crossing the front end of the automobile dropped with great force into the depression where the ballast had been causing injuries to each passenger. The hole was filled with water at the time so that its condition was not apparent to the drivers.
Plaintiffs originally brought suit against the two appellees along with the State of Louisiana, the City of New Orleans and the Dock Board. Their suits against these other defendants were dismissed by judgments prior to the one appealed from and these parties are not before the court.[1] Third-party demands were also filed by Public Belt and American against various parties and against each other, but these third-party demands are likewise not before us on this appeal.
In dismissing plaintiff’s suits, the trial judge gave the following reasons:
“This condition in the roadway between these railroad tracks was caused by an act of God — Hurricane Camille. Its flood waters washed away the shells and fill between the tracks and it was humanly impossible for the defendants to correct the situation any sooner than they did. The defendants did not cause the washout and did not unreasonably delay their remedy of the situation.”
The facts do not support exonerating defendants on the Act of God theory. On August 18, the day after the hurricane, the assistant chief engineer of the Orleans Levee Board inspected this area and found that the ballast had been washed away from the tracks to the extent that the cross-ties between the rails were exposed and an automobile could not be driven over the gap. Furthermore, a report was made on August 20 by a Dock Board harbor policeman that the storm had washed away the ballast from the tracks and left a large hole which “could cause an auto accident or injury to persons entering or leaving the wharf.” Finally a harbor police captain testified that he discovered and reported the condition on the 21st of August. It may be that the hurricane prevented the responsible party from correcting the situation before August 22 when these accidents occurred, but the evidence establishes that the responsible party should have known about the condition and had ample time in which to erect warnings or barricades in order to protect from harm those individuals who would use the road on the date of the accidents.
However, the problem with this case is to determine whose responsibility it was to take appropriate action. In making this determination not only are appellees candidates for this responsibility but also the Dock Board. However, if the Dock Board were responsible plaintiffs would still not be entitled to recovery because the judgments dismissing the suits against the Dock Board are now final.
The relationship between Public Belt and American at the time of the accident was governed by a switch track contract which contained the following pertinent provisions:
“3. COMPANY shall bear all costs of maintaining, repairing, and renewing the TRACK, the actual work of such maintaining, repairing, and renewal to be done when deemed necessary by the RAILROAD, by and with materials furnished by RAILROAD and COMPANY agrees to pay all bills for such material, mainte *1300 nance, renewal and repairs within thirty (30) days after receipt thereof. . ..”
“4. The RAILROAD shall be owner of the TRACK and shall have sole control of it, and shall have the right to use the entire TRACK for any lawful purpose not inconsistent with the proper handling of the business of the COMPANY. In case the ownership of the RAILROAD in the TRACK includes any part of the same lying beyond the right of way or streets or Other Public Places occupied by the RAILROAD, the materials in such part of the TRACK shall be and remain personal and shall not become a part of the realty.”
The vice president and secretary of American testified that this crossing was a part of the Public’ Belt’s spur track used to serve American’s yard. All maintenance on the tracks would be done by Public Belt and a bill for the repairs would be sent to American. However, use of the spur track had been discontinued in February, 1968, when the Public Belt “spiked out” the spur track, that is, drove spikes in the switch from the main line into the spur to prevent it from being activated. Thus, at the time of the accidents it is difficult to see how American could have any responsibility for the condition of the tracks at this crossing. It no longer had any use for the track and Public Belt, as the owner of the track, had taken appropriate action to shut off American from any use of the track. The crossing was located not on American’s property but on the property of the Dock Board. The conclusion is inescapable that American had no responsibility and consequently is not liable to plaintiffs for their injuries.
The road which plaintiffs had taken and across which Public Belt’s tracks were laid belonged to the Dock Board. As the owner of that road the Dock Board would seem to have a duty to protect the traveling public from defects and hazards on its road.[2] The road crossed over the tracks and ordinarily the duty of protecting the traveling public would be the same for that portion crossing the tracks as for the rest of the road. See Bangs v. City of New Orleans, Dept. of Streets, 196 So.2d 324 (La. App. 4th Cir. 1967). However, as already stated, we would be unable to afford plaintiffs any relief with respect to the Dock Board at this stage of the proceedings even if there were a factual basis for the Board's liability.
As for Public Belt, we have considered if LSA-R.S. 45:323 and 324 are applicable. Assuming that the road in question is a public street, R.S. 45:323 provides that railroads “owned and operated by a political corporation” are specifically excluded, and Public Belt falls in this class. See Art. 14, § 26 of the Constitution of 1921.
R.S. 45:324 places the following statutory duty on railroads: “Where railroads, tram-roads, dirt or plank roads cross any highway, the corporation shall so construct the works as not to hinder, impede or obstruct its safe and convenient use . . . ” This statute has been interpreted to impose on a railroad a continuing duty to keep a crossing in repair and has provided a basis for liability where the failure on the part of the railroad to keep such a crossing in repair causes injury to a traveler on such a road. Darby v. New Orleans T. & M. R. Co., 139 La. 213, 71 So. 490 (1916); Homeland Insurance Co. v. Thompson, 12 So.2d 62 (La.App. 1st Cir. 1943); Brandon v. Texas & New Orleans R. Co., 169 So. 254 (La.App. 1st Cir. 1936).
However, we have concluded that the road where this accident occurred is not a “highway” as used in the statute. First, R.S. 32:1(25) defines a highway as one which is publicly maintained and open to use by the public. While the Dock Board is a public agency and its roads are maintained by the public in a sense, this definition in R.S. 32:1 connotes maintenance by the state or a political subdivision in the *1301 exercise of its function to maintain public roads. Second, such a road was treated by this court in Potter v. Board of Com’rs of Port of New Orleans, supra, as a private wharf road as opposed to a public road. Finally, in Rothe v. White, 158 So.2d 329 (La.App. 1st Cir. 1963) the court made a distinction between a highway and
“. a privately maintained right of way, which was not open to the use of the public in the same sense as a public highway or road. It was intended to be used by any member of the public who wished to transact business within any of the establishments located within the Choctaw Village shopping center.”
In the same way, the road where the subject accident occurred was intended to be used by any member of the public who wished to transact business on the dock to which the road led, but it was not intended for the use of the public in general as in the case of a highway. We have thus concluded that R.S. 45:324 is inapplicable and cannot afford a basis for Public Belt’s liability to plaintiffs.
Plaintiffs have attached much significance to the obligation of maintenance placed on Public Belt in its contract with American but this does not provide a basis for concluding that Public Belt had a duty in favor of plaintiff which it breached with resulting liability. This contract’s purpose was to assign rights and obligations between those parties while the spur was in use. Once the spur was spiked out American no longer had any interest in it and Public Belt no longer had any reason to maintain it for American’s benefit.
The injured plaintiffs must look first to the owner of the property for recovery. Recovery from Public Belt would require a showing that it assumed the Dock Board’s liability. No such showing was made here. If such a transfer of responsibility existed it would have been evidenced by some agreement between the Dock Board and Public Belt, and no such agreement is in the record. Moreover, the actions of the Dock Board indicated there was no such agreement. The record shows that the Dock Board’s Harbor Police regularly inspected for just such conditions as occurred here. Their reports went to the engineering department of the Dock Board which then performed the necessary repairs. This procedure was not disputed by any of the employees who testified.
In order to hold Public Belt liable to plaintiffs there must be some basis for assigning to it a duty toward those who use this private road. Plaintiffs have not demonstrated such and we have found no basis for such a duty in our own research. Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

. The suits against the Dock Board were dismissed in November, 1970, based on the controlling jurisprudence to the effect that the Board was immune from suit. This jurisprudence was subsequently overruled by the Supreme Court in Board of C. of P. of New Orleans v. Splendour, S. & F. Co., 273 So.2d 19 (1973).

. In Potter v. Board of Com’rs of Port of New Orleans, 148 So.2d 439 (La.App. 4th Cir. 1963), this court considered the Dock Board’s duty to a plaintiff using a wharf road as the duty owed to a licensee as distinguished from an invitee and limited that duty to the warning of defects actually known to the Board.