371 So.2d 783 (1979)
Sidney L. BARDFIELD, Plaintiff-Appellant-Relator
v.
NEW ORLEANS PUBLIC BELT RAILROAD et al., Defendants-Appellees-Respondents.
Joseph P. BURNS, Plaintiff-Appellant-Relator
v.
NEW ORLEANS PUBLIC BELT RAILROAD et al., Defendants-Appellees-Respondents.
No. 63650.
Supreme Court of Louisiana.
May 21, 1979.
Rehearing Denied June 25, 1979.[*]
*784 Albert S. Dittmann, Jr., Kronlage, Dittmann & Casewell, New Orleans, for plaintiffs-applicants.
R. Patrick Vance, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-respondent N. O. Public Belt Railroad, et al.
Charles E. Leche, Normann & Normann, New Orleans, for defendant-respondent American Marine Corp.
TATE, Justice.
The plaintiffs, guest passengers, were travelling on a road leading to their work at the waterfront. They were injured when the vehicles in which they were riding fell with great force into an eroded depression between the railroad tracks at a crossing. Their suit for personal injuries against the New Orleans Public Belt Railroad (Public Belt), owner of the tracks, and others were dismissed. 363 So.2d 1297 (La.App. 4th Cir. 1978).
We granted certiorari, 366 So.2d 571 (1979), primarily to review the court of appeal's holding that the statutory duty upon railroads to keep a highway crossing in repair did not apply to Public Belt in this instance, because the road on which the crossing-accident occurred was not a "highway" within the meaning of the statute.
Before discussing this issue, we will summarize the facts and dispose of some preliminary issues.
Facts
The remaining defendants before the court are (1) Public Belt, the owner of the railroad tracks, and (2) the American Marine Corporation (American) to whose facility led the spur track over which the road crossed. The road, as well as the land on which American's facility stood, were owned by the New Orleans "Dock Board."[1]
The plaintiffs were employed as longshoremen on the Mississippi River front in New Orleans. The road on which the accident occurred leads to the Florida Avenue Wharf; both road and wharf are on land owned by the Dock Board.
The road intersects with Florida Avenue, a street owned and maintained by the City of New Orleans. There is no sign or other indication that the access road is not open to the general public. The distance from Florida Avenue to the American facility is about two to three blocks.
The road is crossed by railroad tracks built by Public Belt. The tracks had been part of a spur line leading to a facility owned by American, adjacent to the Florida Avenue Wharf. In 1968, however, use of the spur was discontinued and the track was "spiked out" so that it could not be used.
Under a contract between Public Belt and American, the Public Belt railroad was to "remain the owner of the track" and to maintain it at American's expense.
*785 On August 17, 1969, Hurricane Camille ravaged the New Orleans area. The severe flooding accompanying the hurricane washed away the shells and fill between the rails and around the tracks, leaving a deep hole in the road at the crossing. The hole was filled with water and not readily apparent to oncoming motorists.
On August 18, the day after the hurricane, the assistant chief engineer of the Orleans Levee Board inspected the area and found that the shells and fill had been washed away so that it was unsafe to drive an automobile over the gap. On August 20, a Dock Board harbor policeman reported the damage, and a harbor police captain confirmed the report on August 21.
On August 22, a car in which the plaintiff Bardfield was riding attempted to cross the tracks. The hole was filled with water so that the danger was not apparent to the driver. The front end of the car fell into the hole, causing Bardfield's injuries. A few minutes later, a car in which the plaintiff Burns was riding was involved in an identical accident.
Non-applicability of "Act of God" exculpation; non-liability of American
Without extended discussion, we affirm the holdings of the court of appeal that:
(1) A party with responsibility to maintain the crossing in safe condition should have reasonably known of the danger to the travelling public, which resulted from the hurricane-caused erosion of the crossing five days earlier, and had ample time thereafter in which to erect warnings or barricades in order to protect from harm those individuals who would use the road on the dates of the accidentsi.e., that any fault in failure to repair or warn against the hazardous nature of the crossing is not excused as resulting from uncontrollable events (an "act of God"), La.Civ.C. art. 3556(14), (15).
(2) American, which neither owned nor used the abandoned spur track, had no contractual responsibility or other duty to maintain the crossing or to observe or warn of its disrepair. It therefore is not liable for any harm that resulted from the crossing's disrepair.
The Liability of Public Belt
The court of appeal held Public Belt not liable to the plaintiffs, on the following grounds: (1) the Dock Board, as owner of the property on which the accident occurred, had the primary responsibility to maintain the road and the tracks; (2) the plaintiff failed to show that Public Belt had contracted to assume any of the Dock Board's duties or liability with regard to the crossing; (3) under the applicable statutes, La.R.S. 45:323-24, Public Belt had no duty to maintain the crossing.
Again without extended discussion, we will note that we find no error in the court of appeal's holdings on the first two grounds noted above, which were in response to arguments by the plaintiff designed to impose a duty upon Public Belt to maintain the crossings in safe condition independent of any statutory duty to do so imposed by La.R.S. 45:323-24.
The court of appeal erred, however, in finding that La.R.S. 45:324 imposed no statutory duty upon Public Belt to maintain the crossing, such duty being concurrent with the legal and contractual duty of the Dock Board to maintain the crossing in safe condition.
We should first note, however, that La. R.S. 45:323, the immediately preceding statutory section, imposes a strict responsibility upon railroads to maintain for safe traffic any crossings of municipal streets. However, this statute specifically excludes from the duty imposed by it any railroads "owned and operated by a political corporation" (such as the Dock Board).[2]
The succeeding section, La.R.S. 45:324 (upon which we find a basis for Public *786 Belt's liability), does not contain a similar exclusion of public railroads from the statutory duty imposed by it. This statute provides in pertinent part: "Where railroads . . . cross any highway, the corporation shall so construct the works as not to hinder, impede or obstruct its safe and convenient use * * *." This statute has been construed as imposing a continuing duty of due care to keep a crossing in repair, and liability to travelers suffering injuries results from the railroad's failure to perform this duty. See, e.g., Darby v. New Orleans T. & M. R. R., 139 La. 213, 71 So. 490 (1916); Brandon v. Texas & New Orleans R. R., 169 So. 254 (La.App. 1st Cir. 1936).
Railroad crossing over "any highway" within intendment of La.R.S. 45:324
The court of appeal held, however, that the statutory duty to maintain safe crossing imposed by La.R.S. 45:324 did not apply here to Public Belt because the road was not a "highway" within the meaning of R.S. 45:324.
The court of appeal relied on the definition of "highway" in La.R.S. 32:1(25) "the entire width . . . of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular [traffic] . . .; synonymous with the word `street.'" The definitions in this section are technically applicable only to Chapter 1 of Title 32 of the Revised Statutes (see La.R.S. 32:1, introductory paragraph).
Nevertheless, the definition is useful for present purposes. It provides two elements necessary for a road to be a "highway" or "public street": (1) that it be publicly maintained; (2) that it be open to the public.
This definition modifies and brings up to date the terms of Civil Code article 705, providing: "Public roads are those which are made use of as highways, which are generally furnished and kept up by the owners of estates adjacent to them." In contrast, Civil Code article 706 describes "private roads" as "those which are only open for the benefit of certain individuals, to go from and to their homes, for the service of their lands, and for the use of some estates exclusively."
The term "public highways" has traditionally been construed very broadly. In Galloway v. Wyatt Metal & Boiler Works, 189 La. 837, 181 So. 187 (1938), we held that a sandy road on private property and apparently privately owned, built for the purpose of access to a single installation but used also by residents of the surrounding area, was nevertheless a "public highway" even though "it may be owned by a private corporation and may not have been legally established as a public road." 181 So. 190.
In construing a statute applicable to "public highways," in Galloway we stated that the term "is broad enough in its ordinary acception to include every way for travel by persons on foot or with vehicles which the public has the right to use either conditionally or unconditionally . . . `Highways are public ways as contradistinguished from private ways. The distinguishing mark of a highway is that it must be opened generally to public use . . . . Its character is not determined by the number of persons who actually use it for a passage; if it is open, it is immaterial that but few individuals make or are in a position to make use of it, or that one person is most benefited by it; and its character as a highway is not affected even by the fact that it furnishes access or egress to but a single property owner. * * *'" 181 So. 189. See also Asevedo v. First Nat. Life Ins. Co., Inc. 39 So.2d 613 (La.App.Orl.1949).
The principles that emerge from the applicable decisions and statutes are that a public highway, street or road is any place that is (1) open to vehicular traffic by members of the general public, even if the public is unlikely to use the road except to go to a particular place; and (2) maintained by the public. Further, in the application of a statute regulating public safety on a highway, the term "highway" is to be broadly construed in the light of the purpose of the statute to protect the public safety.
*787 The road on which this accident occurred was open to the public. There was no sign to indicate otherwise; it intersected with a major public thoroughfare, and stretched two or three blocks to the waterfront. It was paved, except for the shell and gravel section around the tracks. That the public would usually use the road only to get to the Florida Avenue Wharf does
not change the fact that the general public, not just a select group of persons specially admitted, was permitted to use the road.
The road was also publicly maintained. It is conceded by defendant that the Dock Board is a public entity. Public Belt argues, nevertheless, that the road is in the "private domain" of a public entity, and is therefore neither publicly maintained nor open to the public within the meaning of R.S. 45:324. We do not rest our decision, however, on a determination of whether the road is in the public or the private domain.[3] The road was in fact open to anyone who wished to visit the wharf on public or private business, to gaze at the river, or who simply took a wrong turn from Florida Avenue.
The issue before us, then, is whether the statutory duty imposed upon railroads by La.R.S. 45:324 to maintain safe crossings when their tracks cross "any highway" encompasses a duty to do so when the tracks cross a road open to the public such as above described.[4] In light of the purpose of La.R.S. 45:324to provide protection for members of the public at railroad crossings , we find, for reasons similar to those expressed by us in Galloway (where the road was, after all, privately owned and therefore clearly outside the "public domain"), that this road is a highway within the legislative intention of the statute that a railroad corporation provide for the public safe crossings of its tracks at places where a highway crosses them.
Conclusion
The road on which the accident occurred was open to the public and was publicly maintained. Therefore the road was a "highway" within the meaning of La.R.S. 45:324. Public Belt had an obligation to maintain it in a safe condition at the crossing, which it negligently failed to perform. The plaintiffs are entitled to recover for the damages thereby sustained.[5]

Decree
The judgment of the court of appeal is affirmed insofar as it affirms the dismissal of the actions against American, and is reversed insofar as it affirms the dismissal of the actions against Public Belt. The case and the plaintiffs' claims against Public Belt are remanded to the court of appeal to award the plaintiffs the damages sustained through Public Belt's fault, as well as for any further proceedings consistent with this opinion. Public Belt is cast with all costs of the proceedings to date.
AFFIRMED IN PART, REVERSED IN PART, REMANDED TO THE COURT OF APPEAL.
CALOGERO, J., recused.
BLANCHE, J., dissents, being of the opinion the opinion of the Court of Appeal is correct.
NOTES
[*] Calogero, J., recused.

Summers, C. J., & Blanche, J., would grant a rehearing.
[1] Suit had initially also been brought against the Dock Board (i.e., the Board of Commissioners of the Port of New Orleans). However, the plaintiffs' suits against this defendant had been dismissed on the then-prevailing doctrine of sovereign immunity. In the absence of appeal, this judgment became final as to the plaintiffs.
[2] We pretermit consideration of the plaintiffs' argument that this exemption of governmental responsibility for a tort is unconstitutional.
[3] If the road were, for instance, clearly marked with "No Trespassing" signs, or blocked off by gates from traffic coming from Florida Avenue, it might then be necessary to determine whether the road were in the public or private domain to decide whether the public had a right to use the property.
[4] We do not find to be apposite to the issue before us two decisions relied upon by Public Belt: Rothe v. White, 158 So.2d 329 (La.App. 1st Cir. 1963), which concerned whether highway rules of the road regulating traffic at "intersections" applied to lanes in the parking lot of a shopping center; and Potter v. Board of Comn'rs of Port of New Orleans, 148 So.2d 439 (La.App. 4th Cir. 1963), which concerned whether the driver of an automobile on a Dock Board road was, for purposes of contributory negligence, an invitee or a licensee (and where, moreover, in either event the plaintiff driver was indicated to be contributorily negligent for failing to observe an obvious hazard).
[5] Any concurrent responsibility or liability of the Dock Board is not before us at this time.